## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DEANNA EFFLAND** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **BALTIMORE POLICE** | * |
| **DEPARTMENT,** *et al.* | * |
| | *   **Civil Action No. 1:20-cv-3503-CCB** |
| **Defendants.** | * |
| | * |

\*\*\*\*\*\*

### MEMORANDUM

Pending before the court in this employment discrimination and retaliation action are a motion to dismiss, or in the alternative, a motion for summary judgment, and a motion to strike brought by the Baltimore Police Department, Milton Snead, Richard Worley, Dean Palmere, and Lester Richard Rutherford (collectively, the "officer defendants"), and a motion for partial summary judgment brought by Deanna Effland. The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will grant in part and deny in part the motion to dismiss and deny the motion to strike and motion for partial summary judgment.

### BACKGROUND

This litigation arises from a series of alleged discriminatory and retaliatory actions taken by members of the Baltimore Police Department ("BPD") against Lieutenant Deanna Effland from 2011 and 2021. According to the amended complaint, plaintiff Deanna Effland began her career with the Baltimore Police Department in 1994. (ECF 20, FAC, ¶ 4). Over the course of the next seventeen years, Officer Effland would be promoted to the rank of Sergeant, then Lieutenant, and

1

work on a number of drug enforcement, organized crime, and crime suppression units within the BPD, retaining only a single disciplinary issue on her record for missing a court appearance in 1999. (*Id.* ¶¶ 16-19, 78).

In March 2011, while assigned to the Northeastern District, Lt. Effland worked directly under the supervision of defendant Lester Rutherford, who at the time held the rank of Deputy Major. (*Id.* ¶ 20). Lt. Effland alleges that Mr. Rutherford subjected her and her female colleagues to harsher treatment than their male counterparts. (*Id.* ¶ 21). She also alleges that Mr. Rutherford created a hostile work environment and retaliated against her by refusing to permit her to take approved leave, in violation of BPD policy. (*Id.* ¶¶ 21-24).

In August 2011, Ms. Effland took medical leave for a procedure which required her to take an extended time off work. (*Id.* ¶ 26). During this leave, Mr. Rutherford allegedly showed up to her house without an accompanying female officer, against BPD policy, and informed Lt. Effland that he was suspending her police powers and placing her on suspension. (*Id.* ¶¶ 28-29). In November 2011, Lt. Effland filed an internal complaint with BPD's Equal Employment Opportunity ("EEO") Division regarding Mr. Rutherford's conduct. (*Id.* ¶ 32). As she continued to be contacted by Mr. Rutherford as her internal complaint was pending, despite a "no contact order," Lt. Effland accepted reassignment to the BPD's Communications Section. (*Id.* ¶ 34). In May 2012, Lt. Effland subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 35). Shortly thereafter, the EEO determined that Mr. Rutherford engaged in disparate treatment, sexual harassment, and retaliation in violation in violation of Title VII. (*Id.* ¶ 36). Despite indicating to Lt. Effland that Mr. Rutherford would not be allowed to work in law enforcement again, BPD allowed Mr. Rutherford to resign, retain his credentials, and secure employment with a different police agency following the internal investigation. (*Id.* ¶¶ 44-45). In

2

July 2015, the EEOC issued a Letter of Determination finding that there was reasonable cause to believe that the BPD had both discriminated and retaliated against Lt. Effland. (*Id.* ¶ 46).

In December 2015, Lt. Effland was transferred from Communications back to the northeastern district and promoted to Captain, but in October 2016 subsequently was demoted back to Lieutenant by Milton Snead, her supervisor in the Northeastern District. (*Id.* ¶¶ 49-50). Unknown at the time to Lt. Effland, Mr. Snead was close friends with Mr. Rutherford. (*Id.* ¶ 51). Lt. Effland states that Mr. Snead excluded her from communications and information necessary for her to properly do her job, assigned her tasks that required communication with officers on other shifts, and unfairly criticized her. (*Id.* ¶ 55). After substantial "verbal counselling" for communication issues from Mr. Snead and Richard Worley, Lt. Effland was reassigned to Management Services, which resulted in a pay decrease of almost $10,000 per year. (*Id.* ¶¶ 56-59). Lt. Effland claims that male officers who were counseled for similar communications issues were not reassigned in this manner. (*Id.* ¶ 60).

In January 2017, Lt. Effland was reassigned to the Southwestern District, the furthest assignment in Baltimore from her home, under the supervision of Mr. Worley, who she found out was also close friends with Mr. Rutherford. (*Id.* ¶¶ 62-64). Lt. Effland filed another internal complaint with BPD's EEO Division, alleging that Dean Palmere, Mr. Snead, and Mr. Worley retaliated against her for her past complaints. (*Id.* ¶ 65). From 2017 through June 2021, Lt. Effland contends that she continued to suffer various acts of disparate treatment and retaliation from BPD command staff based on allegedly false and frivolous accusations of misconduct including theft and attempting to get out of patrol duty by injuring herself. (*Id.* ¶ 67-74, 77; ECF 25-4, 2017 EEOC Charge No. 531-2018-00894, at 3-4). Lt. Effland believes these accusations are attempts by BPD command staff to find reason to terminate her or make her work environment so hostile that she

opts to retire. (*Id.* ¶ 82). On December 18, 2017, Lt. Effland filed a second EEOC charge including descriptions of these alleged discriminatory and retaliatory acts. (ECF 25-4). In September 2020, Lt. Effland also purports to have been told by a family friend that Mr. Rutherford publicly bragged that he got Lt. Effland demoted. (*Id.* ¶ 76).

Lt. Effland initiated this action on December 2, 2020, alleging two counts: (I) Discrimination and Retaliation under Title VII, against BPD; and (II) Discrimination and Retaliation under the Maryland Fair Employment Practices Act ("MFEPA"), against all defendants. (ECF 1, Compl.). After the defendants filed a motion to dismiss (ECF 16), Lt. Effland filed an amended complaint on December 7, 2021. (ECF 20). The defendants then filed another motion to dismiss, or in the alternative, for summary judgment. (ECF 25, Mot. to Dismiss). After Lt. Effland responded to the dispositive motion (ECF 28, Opp'n), the defendants filed a reply (ECF 32, Reply) and a motion to strike the response as untimely (ECF 31, Mot. to Strike). Lt. Effland subsequently filed a motion for partial summary judgment (ECF 38, Mot. for Partial Summ. J.), to which the defendants responded (ECF 39, Opp'n) and Lt. Effland replied (ECF 40, Reply). The motions are now ready for resolution.

## DISCUSSION

### I.  Motion to Strike

The court will first address the defendants' Rule 12(f) motion to strike Lt. Effland's response to their motion to dismiss. Federal Rule of Civil Procedure 12(f) allows the court to strike certain matters "from a pleading." Fed. R. Civ. P. 12(f). Pleadings, as defined by Rule 7(a), however, do not encompass motions or responsive briefs. *See* Fed. R. Civ. P. 7(a) (defining pleadings). Thus, Rule 12(f) is improperly invoked here in an attempt to strike the plaintiff's

4

responsive brief. *See, e.g., Davis v. BBR Mgmt., LLC,* DKC-10-552, 2011 WL 337342, at \*2 n.2 (D. Md. Jan. 31, 2011) ("Rule 12(f) [] cannot be used to strike motions").[1]

While the court retains discretion to strike Lt. Effland's response, the defendants submitted a timely reply and fail to demonstrate how they were otherwise prejudiced by the four-day-late filing. *See Lawrence v. Imagine Yacht, LLC,* 333 F. Supp. 2d 379, 391 n.15 (D. Md. 2004) (denying a motion to strike an untimely opposition where the movant failed to demonstrate prejudice). While counsel for Lt. Effland should have sought leave to file the opposing brief late, the court considers the arguments set forth in the untimely briefing in the interests of justice and fairness to the parties. The motion to strike will be denied, and no attorney's fees will be awarded.

## II. Motion to Dismiss

### a. Standard of Review

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'"

---

[1] Unpublished opinions are cited for the persuasiveness of their reasoning, not for any precedential value.

in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

### b. Title VII Discrimination and Retaliation

#### 1. Timeliness

BPD seeks dismissal of the First Count of the Amended Complaint, discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, on the grounds that Lt. Effland failed to timely file her complaint for two reasons: first, because the filing occurred more than ninety days after the presumptive receipt of the right to sue letter from the EEOC, and second because the filing occurred after the 300-day filing requirement found in Title VII.

##### i.   Timeliness Upon Receipt of the Right to Sue Letter

In order to properly bring a claim under Title VII, a plaintiff must first file a charge with and receive a notice of right to sue from the EEOC. 29 C.F.R. § 1601.28. Conferral of the right to sue letter "authoriz[es] the aggrieved person to bring a civil action within 90 days from receipt of such authorization." *Id.* § 1601.28(e)(1). This ninety-day requirement is "in the nature of a statute-of-limitations," and is not jurisdictional, *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006), but is "not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

It is undisputed that the EEOC mailed Lt. Effland her right to sue letter on August 27, 2020, one day after the date listed on the letter. (*See* ECF 28 at 14; ECF 32 at 2; ECF 28-5, Ex. 5, Right to Sue Letter). The parties, however, dispute the date which began the ninety-day window to file a complaint. In her amended complaint, Lt. Effland claims that she received the letter on September 3, 2020, exactly ninety days before the filing of her complaint on December 2, 2020. (ECF 20 ¶

14). In support of this assertion, Lt. Effland proffers her own declaration wherein she attests to the fact that she received the letter on September 3, 2020 (ECF 38-2, Ex. 1, Effland Decl. at 1), a declaration by her attorney Tonya Baña stating that she received a copy of the letter on September 5, 2020 (ECF 38-3 at 1), a copy of the letter sent to Ms. Baña stamped "Aug31" (ECF 42-1, Ex. A) and two copies of the same text message chain that she and Ms. Baña, through their declarations, identify as their conversation on September 8, 2020, wherein they discuss the receipt of the copies of the right-to-sue letter (ECF 38-2, Ex. B, Text Message Chain, at 5; ECF 38-3, Ex. B, Text message Chain, at 8).[2]

In federal court, if the date of receipt of the right to sue letter is disputed, unknown, or asserted without supporting evidence, it is presumed to be three days after mailing. *See* Fed. R. Civ. P. 6(d); *see also Baldwin Cty.*, 466 U.S. at 148 n.1 (applying the three-day presumption of then Rule 6(e)); *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 427 (D. Md. 2013). While BPD asserts that the date of receipt proffered by Lt. Effland is immaterial because of the three-day presumption, Lt. Effland overcomes the presumption by providing sufficient evidence that the date she actually received the letter was September 3, 2020, six days after mailing and exactly ninety days before the present suit was filed on December 2, 2020. (*See* ECFs 38-2, 38-3). Lt. Effland additionally provides a copy of the letter received by her attorney which appears to be timestamped on August 31, and her attorney's declaration that she received the letter on September 5, 2020, five days after it was mailed. (ECF 38-3 at 1; ECF 42-1). Though BPD disputes the credibility of these declarations and text messages as self-serving, it fails to identify any

---

[2] The court also notes, but does not rely on, the Congressional Letter to US Postmaster General Louis DeJoy indicates that the COVID-19 outbreak substantially delayed the delivery of the U.S. mail around the relevant time period in the summer of 2020. (*See* ECF 42-2, Ex. B, Cong. Letter).

documentation indicating that Lt. Effland received the letter earlier.[3] *See Weathersbee*, 970 F. Supp. 2d at 428 (*citing Hilton v. Bedford Paving, LLC*, 769 F. Supp. 2d 92, 99 (W.D.N.Y. 2010)).

BPD also contends that Lt. Effland's failure to adequately respond to their motion to dismiss, or, in the alternative, motion for summary judgment, with the evidence of receipt is tantamount to abandonment of that claim. Though it would have been more reasonable for Lt. Effland to have produced the declarations and text messages in her earlier response brief (ECF 28), she did not abandon her position that the claim was timely. (*See id.* at 13-15 (arguing that she received the right to sue letter on September 3, 2020)). While Lt. Effland's motion for partial summary judgment will be denied as procedurally inapposite, the court will allow that motion and its exhibits to supplement the record in ruling on the motion to dismiss; cases should be decided on their merits, when possible. Accordingly, the court finds that Lt. Effland has made a sufficient showing that her claim was filed within the ninety-day regulatory deadline set by 29 C.F.R. §1601.28(e)(1).[4]

### ii.   Timeliness of the EEOC Charge

BPD next argues that Lt. Effland failed to file her charge of discrimination with the EEOC within the statutorily required timeframe. A charge of discrimination must be filed with the EEOC or the appropriate agency within 180 days of when "the alleged unlawful employment practice

---

[3] *Smith v. N. Va. Orthodontics Ctr., LLC.*, the unpublished case upon which BPD most heavily relies for the proposition that self-serving affidavits are insufficient to rebut the three-day presumption, addresses a different set of circumstances where the affidavits in question lacked corroborating information. No. 1:18-CV-1244, 2019 WL 3225686 (E.D. Va. July 16, 2019). The Smith court held that the plaintiff's own affidavit and the "conclusory" affidavits (which failed to purport any personal knowledge of when the letter was received) of his parents, whose interests were "well-aligned" with the plaintiff, were insufficient to overcome the three-day presumption. *Id.* at *3. Here, unlike in *Smith*, both Lt. Effland and her lawyer, an officer of the court, provide timestamped copies of contemporaneous texts confirming the late receipt of their respective copies of the letter. (*See* ECFs 38-2, 38-3). Additionally, in *Smith*, "cookie-cutter" language and inconsistencies marred the plaintiff's parents' affidavits. *Smith*, 2019 WL 3225686 at *3 n.5.

[4] It also would be best practice for a plaintiff to file their complaint within ninety days of the date in the EEOC notice, thus avoiding unnecessary motions practice.

occurred." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). In Maryland, "[t]his period is extended to 300 days in cases such as this, 'when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" *Id.* (internal citations omitted).

Lt. Effland filed her charge of discrimination with the EEOC on December 18, 2017. (ECF 25-4). BPD does not appear to contest that the incidents described in the complaint and charge that occurred between February 21, 2017 (300 days prior to December 18, 2017) and December 18, 2017, are within the purview of the EEOC charge. BPD does, however, dispute the inclusion of any of the individual defendants' alleged discriminatory actions that took place before this window, between 2011 and February 20, 2017.

"Any discrete acts of discrimination that occurred prior to the applicable period are procedurally barred and cannot be used as a basis for recovery." *Gilliam v. S.C. Dep't of Juvenile Justice,* 474 F.3d 134, 139 (4th Cir. 2007). This prohibition includes even those discrete acts that are related to acts alleged to have occurred within the statutory timeframe. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002) (explaining "[e]ach discriminatory act starts a new clock for filing charges alleging that act"). However, in such a case, plaintiffs may still "us[e] the prior acts as background evidence in support of a timely [Title VII] claim." *Id.* As the incidents Lt. Effland alleges to have occurred in the 300-day window, including the allegedly baseless claim against Lt. Effland that she falsely claimed she was injured in a March 2017 accident and the subsequent refusal to authorize necessary medical treatment for her in September 2017 (*see* ECF 20 ¶¶ 68-73) form a timely potential basis for recovery, the additional discriminatory and

retaliatory acts may be considered as background evidence in support of her claim. *Id.*[5, 6, 7] The

court will therefore not dismiss Lt. Effland's Title VII claim against BPD as untimely under 42

U.S.C. § 2000e–5(e)(1), although she may not recover damages for acts occurring prior to

February 21, 2017.

### 2. Exhaustion and Scope

BPD contends that count one of Lt. Effland's First Amended Complaint exceeds the scope

of the right to sue under Title VII produced by her EEOC charge. A plaintiff's EEOC Charge

"defines the scope of her subsequent right to institute a civil suit." *Bryant v. Bell Atlantic Md., Inc.*,

288 F.3d 124, 132 (4th Cir. 2002). The allegations in the charge "generally operate to limit the

scope of any subsequent judicial complaint. Only those discrimination claims stated in the initial

charge, those reasonably related to the original complaint, and those developed by reasonable

investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."

*Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) (citation omitted).

BPD's argument that Lt. Effland's suit exceeds the scope of her EEOC charge poses few

considerations not already addressed in the court's discussion of timeliness, *supra* § II(b)(1)(ii).

The fact that many of the discrete acts in the First Amended Complaint were either untimely or

occurred after the date of the charge fails to address that the claim, as based on the specific

enumerated incidents of alleged discrimination and retaliation in March and September 2017, may

---

[5] While BPD takes issue with any reliance on Lt. Effland's first EEOC charge from 2011 (ECF 28-2, Ex. 2, 2012 EEOC Charge), the court considers and Lt. Effland appears to argue solely based on her 2017 EEOC charge (ECF 25-4).

[6] BPD contends, without citation to relevant law, that any alleged discriminatory or retaliatory actions which occurred after the filing of her second charge with the EEOC cannot be considered as they, too, are improperly before the court. Such allegations of ongoing discrimination and retaliation may be considered as relevant background evidence in the same manner as the alleged actions occurring before February 21, 2017.

[7] Motions in limine may be filed before trial to address any evidence BPD thinks should be excluded as too remote or unrelated to any surviving claims.

proceed; Lt. Effland has exhausted her administrative remedy. *Compare Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) *with Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 307 (4th Cir. 2019) (Diaz, J. concurring in part and dissenting in part); (*See* ECF 20 ¶¶ 68-73; ECF 25-4 at 3-4). While it is true that Lt. Effland "may not present entirely new factual bases or entirely new theories of liability from those set forth in the initial EEOC charge," count one of the First Amended Complaint does not specifically raise new facts or theories of liability. *Brooks v. United Parcel Service, Inc.*, No. CV DKC 20-2617, 2021 WL 4339194 at *9 (D. Md. Sept. 23, 2021). The count is a claim for sex discrimination and retaliation, as was indicated on the EEOC charge, and references the same "time frame[], actors and discriminatory conduct" relayed to the EEOC. (ECF 20 ¶¶ 88-90; ECF 25-4 (both referencing as background, incidents occurring from 2011-2017, and both identifying the March and September 2017 alleged discriminatory incidents). *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (holding a plaintiff's factual allegations must correspond on both the basis for discrimination and the type of discrimination in her charge). Lt. Effland may proceed on the incidents alleged to have occurred in March and September 2017, as well as the incidents after September 2017, so long as they are reasonably related to, or developed by subsequent investigation of, her initial charge. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).

Accordingly, Lt. Effland's Title VII claim for sex-based discrimination and retaliation against the BPD is not banned by limitations, as confined to incidents alleged to have occurred after February 21, 2017.

**c. MFEPA Discrimination and Retaliation**

11

The defendants proffer multiple reasons why the court should dismiss the second count of Lt. Effland's Amended Complaint for discrimination and retaliation in violation of the Maryland Fair Employment Practices Act. They will be addressed in turn.

### 1. Eleventh Amendment Immunity

The defendants assert that BPD is an arm of the State of Maryland entitled to sovereign immunity from suit under the Eleventh Amendment. "Under the doctrine of sovereign immunity, neither a contract nor a tort action may be maintained against the State unless specific legislative consent has been given and funds (or the means to raise them) are available to satisfy the judgment." *Balt. Police Dept. v. Cherkes*, 140 Md. App. 282, 305 (2001) (quoting *Catterton v. Coale*, 84 Md. App. 337, 345-46 (1990)). This doctrine protects the state and its agencies from liability for both ordinary and state constitutional torts. *Id.* at 306. Under Maryland law, BPD is not an agency of the municipality of Baltimore; rather, it is an agency of the state. PUB. LOCAL LAWS OF MD., Art. 4, § 16-2 (a) (2021) ("The Police Department of Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland."); *Mayor & City Council of Balt. v. Clark*, 404 Md. 13, 26-27 (2008). While the State may waive its Eleventh Amendment immunity, it has not done so with respect to the MFEPA. *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 102 (4th Cir. 2019) (holding that the state did not, as is required to constitute such a waiver, unambiguously specify its "intention to subject itself to suit in *federal court*" for claims brought under the MFEPA) (citation and quotations omitted).

While Lt. Effland contends that BPD should not be considered an agent of the state for Eleventh Amendment immunity purposes, such arguments are unavailing. A number of the cases Lt. Effland cites for the proposition that BPD should be considered a local government entity not to be granted sovereign immunity for state law claims in fact hold the opposite. *See Bumgardner*

*v. Taylor*, RBD-18-1438, 2019 WL 1411059, at *6 (D. Md. Mar. 28, 2019) ("[T]o the extent that

Plaintiff seeks to sue the BPD by asserting state law claims against individual officers in their

official capacity, those claims are barred by the doctrine of sovereign immunity"); *Fish v. Mayor*

*of Baltimore,* CCB-17-1438, 2018 WL 348111, at *3 (D. Md. Jan. 10, 2018) ("The state law claims

against BPD will, therefore, be dismissed with prejudice on sovereign immunity grounds"). The

cases cited that find BPD to be sufficiently funded by the City of Baltimore as to lose the protection

of the Eleventh Amendment are distinguishable as specific to the context of federal 42 U.S.C. §

1983 claims, which Lt. Effland does not raise in her complaint. *See Lucero v. Early,* GLR-13-

1036, 2019 WL 4673448, at *4 (D. Md. Sept. 25, 2019); *Hill v. CBAC Gaming LLC*, DKC-19-

0695, 2019 WL 6729392, at *4-5 (D. Md. Dec. 11, 2019). The MFEPA claim against BPD will,

therefore, be dismissed without prejudice.[8]

Additionally, Mr. Snead and Mr. Worley, who were sued in their official capacities, are

entitled to the same sovereign immunity as their employer. *See Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 71 (1989) ("[A] a suit against a state official in his or her official capacity is

not a suit against the official but rather is a suit against the official's office. As such, it is no

different from a suit against the State itself.") (internal citations and quotations omitted); *see also*

*Ensor v. Jenkins*, No. ELH-20-1266, 2021 WL 1139760, at *25 (D. Md. Mar. 25, 2021) (holding

state sovereign immunity barred claims against a Sheriff employed by the State of Maryland, in

his official capacity). The MFEPA claim against Mr. Snead and Mr. Worley in their official

capacities will thus also be dismissed.

### 2. The MFEPA Cannot Be Used to Hold Individual Defendants Liable

---

[8] The court in *Hill* notes that the Fourth Circuit has explained that dismissals based on sovereign immunity fall under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and are to be dismissed without prejudice. 2019 WL 6729392 at *4 (citing *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640 (4th Cir. 2018)).

Lt. Effland's MFEPA claim is improperly pled against the officer defendants in their individual capacities. With respect to Title VII claims, employees and supervisors "are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 178, 180 (4th Cir. 1998). Given the relative dearth of caselaw interpreting the MFEPA, Maryland courts interpreting the statute have considered federal cases arising under Title VII, its federal analogue, to be persuasive authority. *Taylor v. Giant of Maryland, LLC*, 423 Md. 628, 652 (2011) (*citing Haas v. Lockheed Martin Corp.,* 396 Md. 469, 481, 481 n. 8 (2007)); *see also McCleary-Evans v. Md. Dep't of Transp.*, No. ELH-12-1550, 2015 WL 1285325, at \*22 (D. Md. Mar. 20, 2015), *aff'd*, 631 F. App'x 178 (4th Cir. 2016) (internal quotations and citations omitted). Drawing on this Title VII caselaw, this court has held that, under the MFEPA, supervisory employees cannot be held liable in their individual capacities. *See Hayes v. Md. Transit Admin.*, No. CV RDB-18-0691, 2018 WL 5809681, at \*9 (D. Md. Nov. 6, 2018), *aff'd sub nom. Hayes v. Gorman*, 748 F. App'x 519 (4th Cir. 2019) ("individual supervisors may not be held liable for violations"); *Jennings v. Frostburg State Univ.*, No. ELH-21-656, 2021 WL 5989211, at \*8-9 (D. Md. Dec. 16, 2021) (the MFEPA does not provide for individual liability, and that "instead, an employee may lodge a claim for employment discrimination under the MFEPA only as to his employer").

In response, Lt. Effland contends that the individual defendants are properly named because she seeks declaratory and injunctive relief, but provides no authority to support this proposition. The type of relief sought does not factor into whether individual defendants can be held liable for MFEPA violations. Accordingly, Lt. Effland's MFEPA claim against officers Snead, Worley, Palmere, and Rutherford will be dismissed.

## CONCLUSION

For the reasons stated above, the court will deny the defendants' motion to strike and the plaintiff's motion for partial summary judgment and grant in part and deny in part the defendant's motion to dismiss. A separate Order follows.

_8/4/22_
Date

Catherine C. Blake
United States District Judge