**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**P: (410) 962-4953 | F: (410) 962-2985**
**mdd_jmcchambers@mdd.uscourts.gov**

November 3, 2023

LETTER ORDER AND OPINION TO COUNSEL

RE: *Effland v. Baltimore Police Department*
Civil No. 1:20-cv-03503-CCB

Dear Counsel:

On September 6, 2023, United States District Judge Catherine C. Blake referred this case to the undersigned for all discovery and related scheduling. (ECF No. 64). That same day, the undersigned issued his Memorandum Regarding Informal Discovery, which set forth the procedures by which the parties could seek Court intervention for discovery disputes (ECF No. 65). Presently before the undersigned is one such dispute.[1] Specifically, Plaintiff requests that the undersigned compel Defendant to provide full and complete responses to certain interrogatories and documents requests. (ECF No. 70). The Court has considered Plaintiff's filing (ECF No. 70) and Defendant's response thereto (ECF No. 71). Plaintiff subsequently filed a "reply" (ECF No. 72), which, though outside the Court's informal procedures, the Court will nonetheless consider, given its brevity. As to the substance of the dispute, the undersigned will grant in part and deny in part Plaintiff's request.

## I. Relevant Background

Plaintiff is a member of the Baltimore Police Department ("BPD"). She began her career with the BPD in 1994 as a "sworn police officer" before being promoted to the rank of Sergeant in May 2000, Lieutenant in January 2007, Captain in December 2015, and subsequently being demoted back to Lieutenant in October 2016. (ECF No. 20 at ¶¶ 4, 17, 18, 49, 59).[2] Plaintiff filed her initial Complaint on December 2, 2020, which was then amended on December 7, 2021. (ECF Nos. 1, 20). The Amended Complaint alleges (1) discrimination and retaliation under Title VII; and (2) discrimination and retaliation under the Maryland Fair Employment Practices Act ("MFEPA"). (ECF No. 20). Defendant then moved to dismiss Plaintiff's Amended Complaint or,

---

[1] Neither party strictly followed the procedures outlined by the Court as each submitted detailed position statements well above the page limits outlined by the Court. (ECF No. 65). Although this had the effect of converting the Court's preferred expedited informal procedure into a more formal and lengthy process, the Court itself may well have required additional briefing beyond that outlined in its informal process given the relative complexity of the issues presented.

[2] When the Court cites to a specific page number, range of page numbers, paragraph number, or range of paragraph numbers, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of every electronically filed document and the paragraphs therein.

in the alternative, sought summary judgment against Plaintiff on January 10, 2022, before Plaintiff filed her own motion for partial summary judgment on May 13, 2022. (ECF Nos. 25, 38).

In her ensuing Memorandum Opinion and Order, Judge Blake granted in part and denied in part the motion to dismiss and denied the motion for partial summary judgment. *See generally* (ECF No. 43). Relevant for purposes of this Letter Order and Opinion, Judge Blake declined to dismiss Plaintiff's Title VII claim but also held that Plaintiff "may not recover damages for acts occurring prior to February 21, 2017." (ECF No. 43 at pp. 9–12). Specifically, Judge Blake determined that Defendant's alleged unlawful acts that occurred between February 21, 2017, and December 18, 2017, were the only discrete acts within the justiciable purview of Plaintiff's prior Equal Employment Opportunity Commission ("EEOC") charge, but that other acts of alleged discrimination pre-dating February 17, 2017, could be considered as "background evidence in support of [Plaintiff's] claim." *Id.*; *see also Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004) ("In order to maintain an action under Title VII, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct . . . This period is extended to 300 days in cases such as this, when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.") (quotation omitted). Judge Blake also dismissed Plaintiff's MFEPA claim. (ECF No. 43 at pp. 12–14).

Plaintiff now seeks Court assistance in resolving discovery disputes regarding certain interrogatories and document requests which Defendant has not complied with. The contested discovery requests read as follows:

> <u>Interrogatory No. 7</u>: Identify all BPD sworn officers with the same or less years of service as the Plaintiff who hold the rank of Lieutenant or higher. For each person identified, state their name, gender, rank, and income from BPD for every year from 2015 through the present. For terminated employees, identify the date of termination.
>
> <u>Interrogatory No. 24</u>: For all persons identified in Plaintiff's Interrogatory No. 7, identity those persons who have lodged an EEO complaint with Defendant's Equal Opportunity and Diversity Section (EODS) and include the date in which they lodged the complaint.
>
> <u>Document Request No. 3</u>: The entire personnel file of the Plaintiff in any form, maintained by the Defendant, including all files concerning the Plaintiff maintained by the Plaintiff's supervisor(s), manager(s), Defendant's human resources representative(s), and Defendant's payroll department/provider, irrespective of the relevant time period. (Standard Request from Federal Judicial Center's Initial Discovery Protocols for Employment Cases Alleging Adverse Action – Modified).
>
> <u>Document Request No. 13</u>: Produce all documents that support the specific contention Defendant made to the EEOC on page 4 of its Position Statement alleging that Plaintiff was demoted for 'circumventing the chain of command on numerous occasions.'

> Document Request No. 14: All documents evidencing communications (including emails and text messages on BPD devices) by BPD employees concerning the demotion of the Plaintiff (including, but not limited to, emails and texts by and between Sneed [sic] and anyone else, by and between Worley and anyone else, by and between Burrus and anyone else, by and between Robinson and anyone else, by and between Sturgis and anyone else, by and between Palmere and anyone else, by and between the Commissioner (or his office), or anyone else.

(ECF No. 70). Each is discussed in turn below.

## II. Analysis

Central to the Court's decision-making here is whether the requested information is within the scope of discovery as set forth in Rule 26 of the Federal Rules of Civil Procedure. Rule 26(b) allows discovery regarding information that is relevant to a claim or defense, not privileged, and proportional to the needs of the case (as further defined in Rule 26(b)(1)). Fed. R. Civ. Proc. 26(b)(1). Importantly for purposes of this case, Rule 26(b) reminds litigants that "information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Much of the parties' respective arguments center on whether the case still presents a viable claim under Title VII's Lilly Ledbetter Fair Pay Act ("LLFPA") based on Plaintiff's 2016 demotion (and corresponding reduction in pay) and/or a *Monell*[3] "pattern and practice" claim. The short answer to that is that Judge Blake's prior ruling would seem on its face to preclude such theories, given her holding that alleged unlawful acts that occurred between February 21, 2017, and December 18, 2017, were the only discrete acts that provide a potential avenue for recovery and were otherwise within the purview of Plaintiff's prior EEOC charge.[4] (ECF 43 at p. 9). But that is not fully dispositive of whether the requested discovery is outside the scope of the now-narrowed case given Judge Blake's holding that other acts of alleged discrimination pre-dating February 17, 2017, could be considered as "background evidence in support of [Plaintiff's] claim." *Id.* The Court also notes Judge Blake's instruction that motions in limine may be filed to address evidence that Defendant thinks should be excluded at trial as too remote or unrelated to the surviving claims, which highlights that the definition of relevance for purposes of discovery is broader than that utilized at trial. *Id*. at 10 n.7.

---

[3] "Under *Monell v. Department of Social Services*, a municipality, such as the Baltimore Police Department, is subject to suit under [42 U.S.C.] § 1983 if he suffered a constitutional violation at the hands of an employee acting under color of a municipal policy . . . All § 1983 *Monell* claims have three elements: (1) identifying the specific policy or custom; (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary affirmative link between identified policy or custom and specific violation." *Jones v. Jordan*, No. CV GLR-16-2662, 2017 WL 4122795, at *3 (D. Md. Sept. 18, 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

[4] To the extent the legal issue of whether a pay decrease secondary to a demotion is actionable under the LLFPA must be determined in the context of Plaintiff's case as narrowed by Judge Blake, that issue is beyond the scope of the undersigned's discovery referral, although the Court notes that decisions from other judges of this Court would not support such a theory. *See, e.g.*, *Ferguson v. Town of Riverdale Park, Md.*, No. 20-CV-03574-LKG, 2021WL 5742234 (D. Md. Dec. 1, 2021).

Clearly then, some evidence of conduct prior to February 21, 2017, is within the scope of discovery "as background evidence in support of Plaintiff's claim," but such discovery is not unlimited given its "supporting role" relative to the allegations that are still viable in the case.

A. Interrogatory Nos. 7 and 24

Plaintiff contends that interrogatory no. 7 is "crucial" to "identify appropriate comparators and compute damages resulting from Defendant's alleged discrimination and retaliation." (ECF No. 70 at pp. 2–3); *see also id.* at 3 ("Without the requested information for 2015-2019, Plaintiff cannot identify appropriate comparators or fully assess her damages."). Moreover, Plaintiff argues that interrogatory no. 24, requesting that Defendant identify which comparators filed an EEO complaint (and the date of the complaint), "goes to the heart of Plaintiff's theory of recovery" because it "would allow a fact finder to compare the career trajectory of her peers who, like the Plaintiff, engaged in protected activity to those peers that did not . . . [and] would further allow a fact finder to determine whether the demotion decision that affected Plaintiff's pay was an unlawful de facto policy affecting the pay of those that engaged in protected activity or if it was strictly isolated to the Plaintiff." (ECF No. 4 at p. 4). Relatedly, Plaintiff offers that interrogatory no. 24 elicits information that could trigger recovery for "each and every paycheck" that Plaintiff was deprived of given her demotion, and that 42 U.S.C. § 2000e-5(e)(3)(A) allows Plaintiff to recover "back pay up to two years preceding the filing of the charge of discrimination even if the discreet act affecting compensation is well outside the applicable statute of limitations and not compensable." (ECF No. 70 at pp. 3–4).

Those justifications based on actions or computing damages from those actions that are beyond the incidents described in the complaint that occurred between February 21, 2017, and December 18, 2017, are insufficient to support Plaintiff's request. That said, the Court agrees that some limited comparator evidence does fall within the "background evidence" described by Judge Blake.[5] It is unclear from the parties' submissions exactly what comparator data was promised or produced. The Court will order that, to the extent not done so, Defendant will identify the names and promotion history of Lieutenants[6] from October of 2016 forward, indicating which, if any, filed EEO claims as well as the date of those claims. If that information can be gleaned from records already produced by Defendant, Defendant should provide instructions to Plaintiff on how to interpret the records so as to determine such information.

B. Document Request Nos. 3, 13, and 14

Plaintiff further takes issue with the information provided by Defendant in response to document requests 3, 13, and 14. Regarding requests no. 3 and 14, Plaintiff asserts that Defendant

[5] Defendant argues that Plaintiff's deposition testimony negates the viability of any discrimination claim during the applicable period, but such a substantive ruling is more appropriate for Judge Blake. At the discovery stage, the undersigned is not prepared to so limit Plaintiff's remaining theories.

[6] Defendant takes issue with choosing "Lieutenants" because Plaintiff at one time was a Captain and, of course, complains about her demotion. That demotion is not one of the surviving allegations of the suit. The Court's resolution above looks to Plaintiff's post-demotion career trajectory compared to others who did not file EEO complaints, as that seems to be more appropriate background for her still-existing discrimination and retaliation claims.

has failed to produce "signed statements from two Officers and a Sargent [sic] that were created near the time of the Plaintiff's demotion that go to the heart of Plaintiff's purported 'communication issues' that Defendant has stated is one of the legitimate non-discriminatory reasons for the Plaintiff's demotion" as well as an allegedly re-written statement from one of the officers. (ECF No. 70 at p. 5). Regarding document request no. 13, Plaintiff submits that Defendant's supplemental response to the request on October 3, 2023, "identified over 766 pages none of which were responsive to the request in anyway whatsoever." *Id.* at pp. 5–6. Defendant responds that (1) it has been unable to find the documents requested in nos. 3 and 14 and thus "cannot produce what it cannot locate";[7] and (2) its supplemental responses to no. 13 were, in fact, "responsive and contain significant documentation of Plaintiff's performance issues and circumvention of the chain of command on numerous occasions." (ECF No. 71 at pp. 7–8).

The Court cannot compel Defendant to produce what it does not possess or cannot locate after a reasonable search as required by Rule 26(g). But Defendant shall supplement its response to make clear either that the statements never existed or that they did exist but are now lost or destroyed (as well as any known circumstances surrounding their unavailability).

Plaintiff does not provide any explanation for its position that the supplemental responses to document request no. 13 are deficient other than asserting in conclusory fashion that they were not responsive and amount to a "document dump." The Court has no basis to determine that Defendant's responses were deficient or designed to mislead. But, shall order that Defendant review its productions pursuant to document requests 3, 13, and 14 on an ongoing basis and provide prompt supplemental responses to such requests if Defendant locates documents responsive to those requests consistent with its responsibilities under Rule 26(e)(1).

## III. Conclusion

For the reasons set forth in this Letter Order and Opinion, Defendant is ordered to (1) provide responsive information as called for regarding Plaintiff's interrogatories 7 and 24 within fourteen (14) days of the date of this Letter Order and Opinion; (2) review its productions in response to document requests 3, 13, and 14 and supplement such productions as necessary with any additional responsive documents that Defendant uncovers promptly as required by Rule 26(e)(1); and (3) where Defendant has no responsive information or cannot locate responsive information (such as the Form 95s), Defendant shall so state by way of supplemental response, along with any information it might have to the extent such statements are missing or were destroyed.

Notwithstanding its informal nature, this Letter Order and Opinion is considered a formal Order and Opinion of the Court, and the Clerk should docket it as such.

[7] Defendant further indicates that the documents it has already produced memorialize some of the information believed to be within the signed statements. *See* (ECF No. 71 at p. 7; ECF No. 71-2).

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge

CC: The Honorable Catherine Blake