UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

January 9, 2024

LETTER ORDER AND OPINION TO COUNSEL

RE:   *Effland v. Baltimore Police Department*
      Civil No. 1:20-cv-03503-CCB

Dear Counsel:

On September 6, 2023, United States District Judge Catherine C. Blake referred this case to the undersigned for all discovery and related scheduling. (ECF No. 64). That same day, the undersigned issued his Memorandum Regarding Informal Discovery, which set forth the procedures by which the parties could seek Court intervention for discovery disputes (ECF No. 65). Presently before the undersigned is the third discovery dispute in as many months. *See Effland v. Balt. Police Dep't*, No. 1:20-CV-03503-CCB, 2023 WL 7273388 (D. Md. Nov. 3, 2023); *Effland v. Balt. Police Dep't*, No. 1:20-CV-03503-CCB, 2024 WL 69581 (D. Md. Jan. 5, 2024). Specifically, Plaintiff requests the compulsion of thirteen (13) pages of handwritten notes authored in the course of Defendant's investigation into Plaintiff's allegations. (ECF No. 96). The Court has considered both Plaintiff's and Defendant's position letters (ECF Nos. 96, 97), and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Plaintiff's request will be granted, and Defendant will be ordered to produce the contested documents within the timeframe further set forth below.

### I. Relevant Background

Plaintiff is a member of the Baltimore Police Department ("BPD"). She began her career with the BPD in 1994 as a "sworn police officer" before being promoted to the rank of Sergeant in May 2000, Lieutenant in January 2007, Captain in December 2015, and subsequently being demoted back to Lieutenant in October 2016. (ECF No. 20 at ¶¶ 4, 17, 18, 49, 59).[1] Plaintiff filed her initial Complaint on December 2, 2020, which was then amended on December 7, 2021. (ECF Nos. 1, 20). The Amended Complaint alleges (1) discrimination and retaliation under Title VII; and (2) discrimination and retaliation under the Maryland Fair Employment Practices Act ("MFEPA"). (ECF No. 20). Defendant then moved to dismiss Plaintiff's Amended Complaint or, in the alternative, sought summary judgment against Plaintiff on January 10, 2022, before Plaintiff filed her own motion for partial summary judgment on May 13, 2022. (ECF Nos. 25, 38).

---

[1] When the Court cites to a specific page number, range of page numbers, paragraph number, or range of paragraph numbers, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of every electronically filed document and the paragraphs therein.

In her ensuing Memorandum Opinion and Order, Judge Blake granted in part and denied in part the motion to dismiss and denied the motion for partial summary judgment. *See generally* (ECF No. 43). Relevant for purposes of this Letter Order and Opinion, Judge Blake declined to dismiss Plaintiff's Title VII claim but also held that Plaintiff "may not recover damages for acts occurring prior to February 21, 2017." (ECF No. 43 at 9–12). Specifically, Judge Blake determined that Defendant's alleged unlawful acts that occurred between February 21, 2017, and December 18, 2017, were the only discrete acts within the justiciable purview of Plaintiff's prior Equal Employment Opportunity Commission ("EEOC") charge, but that other acts of alleged discrimination pre-dating February 17, 2017, could be considered as "background evidence in support of [Plaintiff's] claim." *Id.*; *see also Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004) ("In order to maintain an action under Title VII, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct . . . This period is extended to 300 days in cases such as this, when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.") (quotation omitted). Judge Blake also dismissed Plaintiff's MFEPA claim. (ECF No. 43 at 12–14).

Plaintiff now seeks Court assistance in resolving discovery disputes regarding "13 documents described as handwritten notes . . . authored by a BPD employee as protected work product done in anticipation of litigation." (ECF No. 96 at 1) (quotation omitted). Specifically, Plaintiff seeks handwritten notes created by Jan Bryant, Defendant's former Equal Employment and Diversity Section Director ("EEDS"), in the course of investigating Plaintiff's EEOC complaints and subsequently used in drafting Defendant's position statement in response to Plaintiff's EEOC charge underlying the present lawsuit. Defendant has refused to produce these handwritten notes on the grounds that they constitute protected work product for which Plaintiff is unable to demonstrate substantial need. (ECF No. 97).

**II.     Analysis**

A. <u>The Handwritten Notes are Protected Attorney Work Product.</u>

The handwritten notes at issue are protected attorney work product. "As set forth in Rule 26(b)(3), the work product doctrine prohibits a party from obtaining discovery of materials prepared in anticipation of litigation, absent a showing both of substantial need and of an inability to obtain, without undue hardship, the substantial equivalent of the materials sought." *LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings*, 209 F.R.D. 112, 115 (D. Md. 2002). Determining whether certain materials constitute protected work product requires assessing "whether in light of the nature of the documents and the particular facts of a given case, the documents can be fairly said to have been prepared or obtained because of the prospect of litigation or whether they must be deemed to have been prepared in the ordinary course of the company's business." *Id.* (citing *APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 18 (D. Md. 1980)); *see also Paice, LLC v. Hyundai Motor Co.*, 302 F.R.D. 128, 133 (D. Md. 2014) ("[T]he proponent of the privilege carries the burden of demonstrating that the documents at issue were created 'because of' the present litigation."). "In satisfying this burden, a party cannot rely on conclusory statements in its memoranda; rather, as in the case of attorney-client privilege, the proponent must provide specific factual support for its assertions." *Paice*, 302 F.R.D. at 133.

Plaintiff's argument that investigating Plaintiff's EEOC charge fell within the ordinary job duties of Bryant (and her successor, Karen Tyler) thereby making the notes prepared "as a matter of standard operating procedure" is unpersuasive. (ECF No. 96 at 1). In other words, Plaintiff asserts that the handwritten notes were not prepared in anticipation of litigation because there were created pursuant to Bryant's/Tyler's typical job duties as EEDS Directors. Case law in the Fourth Circuit and elsewhere, however, indicates that investigation notes created pursuant to a plaintiff's filing of an EEOC charge constitutes protected attorney work product. *See, e.g.*, *Revak v. Miller*, No. 7:18-CV-206-FL, 2020 WL 1164920, at *9 (E.D.N.C. Mar. 9, 2020) ("[T]he investigation was undertaken because of Plaintiff's EEOC charge . . . Additionally, the interviews were conducted . . . more than two months after Plaintiff filed the EEOC charge. Despite the existence of a policy mandating an investigation, it appears that these interviews [and the documents and notes created pursuant therefrom] were conducted because of and in response to Plaintiff's EEOC charge, and the work product doctrine applies."); *Moore v. DAN Holdings, Inc.*, No. 1:12CV503, 2013 WL 1833557, at *7 (M.D.N.C. Apr. 30, 2013) (acknowledging "persuasive authority that an investigation following an EEOC charge constitutes activity in anticipation of litigation"); *Green v. Kroger Co.*, No. 4:20-CV-01328, 2022 WL 1078024, at *2 (S.D. Tex. Apr. 11, 2022) ("As explained by one court, an investigation flowing from an EEOC Charge of Discrimination is clearly in anticipation of litigation because its purpose is to prepare a response to the EEOC charge.") (cleaned up). Plaintiff's argument is thus also belied by Defendant's explanation that the handwritten notes were created for and ultimately used to draft Defendant's position letter in response to Plaintiff's EEOC charge. *See* (ECF No. 97 at 1) ("The notes are part of BPD's internal investigation into Lt. Effland's claims and were used to prepare BPD's position statement in response to the EEOC charge."); *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, No. 1:08-CV-173, 2009 WL 1543651, at *8 (N.D. Ind. June 2, 2009) ("[T]hese documents were generated for the purpose of responding to Plaintiff's EEOC charges, and therefore were created in anticipation of litigation."). Put simply, the handwritten notes were not created by Bryant/Tyler strictly in the course of their ordinary duties. While their ordinary duties may include investigating EEOC charges generally, the handwritten notes at issue were created specifically in response to Plaintiff's concrete EEOC charge and Defendant has sufficiently demonstrated that the notes were created in anticipation of litigation. Accordingly, the handwritten notes at issue constitute protected attorney work product.

    B. <u>Defendant has Waived Any Privilege Regarding the Handwritten Notes by Virtue of its Asserted Affirmative Defenses.</u>

The Court need not analyze the issue of "substantial need" because it finds that Defendant waived its work product privilege assertion through its affirmative defenses. Defendant asserted in its Answer to Plaintiff's Amended Complaint that "To the extent that Plaintiff was subject to disparate treatment, Defendant is not responsible or liable because the Defendant exercised reasonable care to prevent and correct promptly any disparate treatment, and the Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by the Defendant or to avoid harm otherwise." (ECF No. 45 at 14); *see also* (ECF No. 45 at 13) ("Defendant made a good faith effort to comply with federal law by fully investigating Plaintiff's internal claim(s) of discrimination."). Such language is tantamount to asserting what courts have dubbed the "*Faragher/Ellerth*" affirmative defense stemming from the Supreme Court's previous decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of*

*Boca Raton*, 524 U.S. 775 (1988). *See Louis v. Sun Edison, LLC*, 797 F. Supp. 2d 691, 708 (D. Md. 2011) ("To prevail on the *Faragher/Ellerth* affirmative defense, the employer must demonstrate that: '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'") (quoting *Faragher*, 524 U.S. at 807). As comparing the Answer and the language of *Faragher* indicates, Defendant intended to rely on the *Faragher/Ellerth* affirmative defense in defending against Plaintiff's Amended Complaint.

However, federal courts nationwide have consistently ruled that affirmatively invoking the *Faragher/Ellerth* defense removes certain protections for documents and notes created as a part of a defendant's internal investigation resulting from a plaintiff's employment discrimination lawsuit. *See Koss v. Palmer Water Dep't*, 977 F. Supp. 2d 28, 29 (D. Mass. 2013) ("[W]hen a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense that is premised . . . on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."); *E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 611 (D. Colo. 2008) ("Courts have interpreted an assertion of the *Faragher/Ellerth* affirmative defense as waiving the protection of the work product doctrine and attorney-client privilege in relation to investigations and remedial efforts in response to employee complaints of discrimination because doing so brings the employer's investigations into issue."); *Walker v. Cnty. of Contra Costa,* 227 F.R.D. 529, 535 (N.D. Cal. 2005) ("If [an employer] assert[s] as an affirmative defense the adequacy of [its] pre-litigation investigation into [an employee's] claims of discrimination, then [it] waive[s] the attorney-client privilege and work product doctrine with respect to documents reflecting that investigation."); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 41 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) ("When an employer puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation. This waiver encompasses 'not only the [investigative] report itself, but [] all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation.'") (quoting *Angelone v. Xerox Corp.*, No. 09 Civ. 6019(CJS)(JWF), 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011), *reconsideration denied*, 2012 WL 537492 (W.D.N.Y. Feb. 17, 2012)).

The Court finds it appropriate to order the production of the contested notes against this backdrop of precedent. While the Court is certainly respectful of the rationales against permitting disclosure of otherwise protected work product, the Court is also mindful that "it is unfair for the Defense to hide its investigations and remedial efforts in this matter behind the veil of privilege up and until the point of trial, where it plans to use evidence of its remedial efforts to evade liability." *Jones v. Rabanco, Ltd.*, No. C03-3195P, 2006 WL 2401270, at *4 (W.D. Wash. Aug. 18, 2006). In acknowledgement of the former, the Court's holding is specifically limited to the contested 13 pages of handwritten notes. In other words, the Court finds at this juncture that Defendant waived its work product privilege argument to *only* the contested handwritten notes by asserting the *Faragher/Ellerth* defense, and this ruling is not meant to be utilized by Plaintiff to assume that she is automatically entitled to additional investigation-related documents. *See Angelone*, 2011 WL

4473534 at *3 ("Only if the Defendant relies on those documents for its *Faragher/Ellerth* defense will the privilege be waived.").[2]

Moreover, Defendant's assertion that these specific materials should be shielded from discovery is undercut by the materials already produced by Defendant.  Plaintiff indicates in her position letter that Defendant has already produced (1) other handwritten notes relevant to "the entire investigative file related to Plaintiff's EEOC charge," and (2) emails from Ms. Bryant to witnesses while investigating Plaintiff's EEOC charge.  (ECF No. 96 at 2).  Thus, Defendant has already opened the door to disclosure of Bryant's notes through its prior disclosures, and the Court finds no compelling reason to protect the withheld documents which are seemingly subject to disclosure under Defendant's *Faragher/Ellerth* defense and potentially the result of Defendant picking and choosing which investigatory notes it wishes to disclose.

### III.    Conclusion

For the reasons set forth in this Letter Order and Opinion, Defendant is ordered to provide the withheld 13 pages of handwritten notes within fourteen (14) days from the date of this Letter Order and Opinion.

Notwithstanding its informal nature, this Letter Order and Opinion is considered a formal Order and Opinion of the Court, and the Clerk should docket it as such.

Sincerely yours,

/s/
J. Mark Coulson
United States Magistrate Judge

CC: The Honorable Catherine Blake

---

[2] Defendant indicates in a footnote that five pages of the handwritten notes "consist of Ms. Bryant's general investigatory notes, including a timeline, which BPB reserves the right to argue constitute opinion work product subject to even greater protection against disclosure." (ECF No. 97 at 3 n.1).  The Court finds this assertion unpersuasive to support Defendant's position against disclosure.  Should Defendant have wished to argue that the handwritten notes were subject to additional protection because they involve attorney opinions, then Defendant should have raised that in its position letter coincidentally with its argument that the notes constitute protected work product.  Moreover, such an assertion by Defendant would not alter the fact that it waived the work product privilege with respect to the handwritten notes through its assertion of the *Faragher/Ellerth* affirmative defense as detailed above.