## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **DEANNA EFFLAND,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-20-3503** |
| **v.** | * | |
| | * | |
| **BALTIMORE POLICE DEPARTMENT,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Deanna Effland ("Plaintiff") filed this action against defendant Baltimore Police Department ("BPD"), alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1] Plaintiff's claims arise out of her employment with BPD. This matter is before the Court on BPD's Motion for Summary Judgment. ECF No. 84. The motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the Court will grant the motion and enter summary judgment in BPD's favor.

---

[1] Plaintiff initially filed suit against BPD and several BPD employees asserting claims under both Title VII and the Maryland Fair Employment Practices Act ("FEPA"). On August 4, 2022, the Court granted in part the defendants' Motion to Dismiss the Amended Complaint and dismissed the FEPA claim, the only claim asserted against the individual employees. ECF Nos. 43 & 44.

Thereafter, in 2023, Plaintiff filed a separate action against BPD, alleging retaliation in violation of Title VII based conduct by BPD and its counsel in the instant case. *See Effland v. Balt. Police Dep't*, Civ. No. MJM-23-1494.

## I.     BACKGROUND

Plaintiff was employed with BPD from August 1994 through April 2024. ECF No. 84-4 (Effland Dep.) 4:21; ECF No. 118-1 (BPD Human Resources Order). From approximately June 2011 to January 2012, she served as an Administrative Lieutenant in the Northeastern District, the same position she held when she filed this suit. Effland Dep. 50:7–15. In that role, Plaintiff reported to then-Captain Lester Rutherford, who later retired in July 2013. *Id.* at 68:6; ECF No. 84-5 (Rutherford Dep.) 18:20. In November 2011, Plaintiff filed an administrative complaint with BPD's Equal Opportunity & Diversity Section ("EODS") alleging that Rutherford subjected her to sexual harassment and disparate treatment. ECF No. 84-8 (EEOC Right-to-Sue Letter dated July 29, 2015). The charges against Rutherford were sustained, but Rutherford retired before any discipline was imposed. Rutherford Dep. 30:11–31:11.

From January 2012 through December 2015, Plaintiff was assigned to the Communications Section. Effland Dep. 50:14–53:1. In December 2015, Plaintiff was promoted to the rank of Captain by then-Commissioner Kevin Davis (hereinafter "Commissioner Davis"); she remained in the Communications Section. *Id.* at 54:15–55:5, 274:15–276:2. In July 2016, Plaintiff was transferred to the Northeastern District, where she reported to Major Milton Snead, who in turn reported to then-Assistant Chief of Patrol/Inspector Richard Worley. *Id.* 291:19–292:10; ECF No. 84-10 (Snead Dep.) 34:1–36:8; ECF No. 84-11 (Worley Dep.) 29:21–30:21.

On October 7, 2016, Plaintiff was demoted from the rank of Captain to Lieutenant by Commissioner Davis. Effland Dep. 330:11–332:19; Robinson Dep. (ECF No. 84-38) 119:10–128:19. Plaintiff argues that "Worley played a large role" in Plaintiff's demotion. ECF No. 111 (Pl. Opp'n) at 4. Worley, who was above Plaintiff in the Northeastern District chain of command, testified that he did not make the decision to demote Plaintiff, but authored memoranda that were

used by others in the decision-making process. *See* Worley Dep. 150:12–14. The memoranda, addressed to then-Chief Osborne Robinson, generally relate to Plaintiff's alleged failure to "make the proper command notifications" in response to an escaped prisoner, and a disagreement between Plaintiff and Snead regarding the appropriate chain of command. ECF No. 112-12. Commissioner Davis directed then-Deputy Commissioner Dean Palmere to inform Plaintiff she was being demoted. *See* Robinson Dep. 122:4–127:21. Davis told Palmere not to give Plaintiff a reason why she was being demoted. *Id.* Plaintiff states—in her charge of discrimination to the EEOC—that she was told she was being demoted because of "communication issues" between Plaintiff and Snead. ECF No. 111-3. Plaintiff and Snead did not get along and did not "really communicate with each other much at all[,]" according to Worley. Worley Dep. 245:20–246:4.

The day she was demoted, Plaintiff filed an internal EODS complaint alleging that "treatment by her superiors was retaliation for a previous discrimination complaint." ECF No. 84-18 (EODS Internal Memorandum). When there was no response, on January 2, 2017, she sent a follow-up memo to the internal EEO Director. ECF No. 112-2. Plaintiff claimed that her demotion was an orchestrated effort to damage her reputation and career, primarily as retaliation for filing her 2011 complaint against Rutherford. *Id.*

On January 19, 2017, Plaintiff was struck by a BPD vehicle operated by Officer Arthur Harvey in the BPD parking garage. Effland Dep. 184:9–185:9. Harvey admitted that he unintentionally struck Plaintiff. ECF No. 112-4. Initially, Plaintiff did not believe she was injured and returned to work. ECF No. 85-3 (Internal Affairs Investigation Report) at 5; *see also* Pl. Opp'n at 23 (stating that Plaintiff "did not experience any immediate pain" from the accident). Plaintiff did not immediately report the accident to her supervisor, Director Elaine Harder, or to the Communications Unit or Accident Investigation Unit ("AIU"), as required by BPD policy. Effland

3

Dep. 203:1–6; ECF No. 85-3 at 6–7; ECF No. 111-17 (BPD Policy 908). Later that day, she told Director Harder about the accident. Effland Dep. 195:5–196:7. Director Harder subsequently filed a complaint with Internal Affairs ("IA"). *Id.* at 192:15–193:18; ECF No. 85-3 (BPD IA Report). Plaintiff later submitted a claim for workers' compensation benefits for injuries sustained from the accident, which was contested by the City of Baltimore. ECF Nos. 112-8 & 112-11. On January 25, 2017, Plaintiff went out on medical leave and remained out for over a year, until February 16, 2018. Effland Dep. 107:18–108:5; ECF No. 85-5 (BPD Medical History for Plaintiff).

The same day she was struck by a vehicle, Plaintiff learned she was being transferred to the Southwestern District, effective February 2, 2017. Effland Dep. 116:10–19; ECF No. 84-21 (BPD Personnel Action Memorandum dated January 20, 2017). Ultimately, she did not report to her new post because of her medical leave. Effland Dep. 77:14–78:1; 125:20–126:19.

While Plaintiff was on leave, BPD conducted three internal investigations into Plaintiff's conduct in response to internal complaints alleging breaches of BPD employee policies. *See* ECF Nos. 85-3, 85-7, 85-8 (BPD IA Reports). Specifically, the investigations related to: (1) Plaintiff's alleged failure to report the parking garage accident; (2) Plaintiff's alleged possession of a BPD membership card to BJ's Wholesale Club; and (3) Plaintiff's alleged involvement in a domestic assault during an unreported absence from her home while on medical leave. *See id.*; Effland Dep. 183:17–184:4, 205:10–209:5, 213:20–215:2. Ultimately, Plaintiff was disciplined for conduct unbecoming in connection with both failing to report the parking garage accident and violating the medical leave policy by leaving home without notifying her command. Regarding the former finding, Plaintiff incurred a one-day loss of leave and received a letter of reprimand. ECF No. 112-

4

6. For the medical leave policy violation, Plaintiff received a letter of reprimand and was required to participate in remedial training. ECF No. 85-4 at 15.[2]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 18, 2017, while she remained on medical leave. ECF No. 111-3 at 3. She alleged sex discrimination and retaliation by BPD based on her demotion in October 2016, the IA investigation of the parking garage accident, and the challenge to Plaintiff's claim for workers' compensation benefits.

Plaintiff retired from BPD on April 1, 2024. ECF No. 118-1.

## II.   LEGAL STANDARD

A court may grant a party's summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted).

A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130

---

[2]     It was initially recommended that Plaintiff receive a letter of reprimand and 10-day suspension without pay for the medical leave policy violation. ECF No. 85-9 at 3. Plaintiff, however, rejected the recommended discipline and requested an Administrative Hearing Board Hearing. *Id.* at 5. The Board ultimately sustained the finding that Plaintiff violated the policy. ECF 85-4 at 15. The Board issued a "simple letter of reprimand" and "remedial training" as discipline. *Id.* at 16.

(4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249.

## III.   DISCUSSION

### A.      Equitable Estoppel and Tolling

Preliminarily, in Maryland, a charge of discrimination must be filed with the EEOC or the appropriate agency within 300 days of when the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). In this case, Plaintiff filed her charge of discrimination with the EEOC on December 18, 2017. ECF No. 111-3 at 3.[3] Accordingly, on August 4, 2022, the Court[4] granted in part Defendants' motion to dismiss and ordered that Plaintiff "may not recover damages for acts occurring prior to February 21, 2017[,]" 300 days before December 18, 2017. ECF No. 43 at 10; *Effland v. Baltimore Police Dep't*, No. 1:20-CV-3503-CCB, 2022 WL 3107144, at *5 (D. Md. Aug. 4, 2022). The Court

---

[3]      The EEOC complaint appears to have been submitted on December 19, 2017, although Plaintiff signed the document on December 18. *See* ECF No. 111-3 at 1, 3. The Court previously found the filing date to be December 18, 2017, ECF No. 43 at 10, and Defendants do not object to the use that date, ECF No. 118 (Def. Reply) at 19.

[4]      This matter was initially assigned to Judge Blake. The case was reassigned to the undersigned on April 30, 2024.

[4]      This matter was initially assigned to Judge Blake. The case was reassigned to the undersigned on April 30, 2024.

ruled that "[a]ny discrete acts of discrimination that occurred prior to the applicable period are procedurally barred and cannot be used as a basis for recovery," even if those acts are related to an alleged act within the statutory timeframe. ECF No. 43 at 9; *Effland*, 2022 WL 3107144, at *5 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), and *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 139 (4th Cir. 2007)). Acts that occurred outside the 300-day statutory window may only serve as background evidence in support of Plaintiff's timely claims. *Id.* (quoting *Nat'l R.R.*, 536 U.S. at 113).

Nonetheless, in response to BPD's Motion for Summary Judgment, Plaintiff argues this Court should apply the doctrines of equitable estoppel and/or equitable tolling such that Plaintiff would be eligible to recover for her October 2016 demotion. *See* Pl. Opp'n at 9–13. Specifically, Plaintiff argues that BPD should be equitably estopped from asserting statute of limitations as a defense because, Plaintiff claims, BPD purposefully withheld information related to her 2016 demotion. *Id.* at 10. Plaintiff further argues she is entitled to equitable tolling of the statute of limitations because she pursued her rights diligently, although her medical leave prevented her from timely filing. *Id.*

In certain limited situations, a plaintiff's claims alleging conduct outside the statutory window may be recoverable under the doctrines of equitable estoppel and equitable tolling. *See Belton v. City of Charlotte*, 175 F. App'x 641, 653 (4th Cir. 2006). In deciding whether to apply equitable estoppel, "the court must weigh the conduct of both parties 'in the balances of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity.'" *Edwards v. Genex Coop., Inc.*, 777 Fed. App'x 613, 625 (4th Cir. 2019) (quoting *Hawkins v. M. & J. Fin. Corp.*, 77 S.E.2d 669, 672 (N.C. 1953)). To invoke equitable estoppel, a plaintiff must show: "(1) lack of knowledge and the means of knowledge of the truth

as to the facts in question; (2) reliance upon the conduct of [the defendant]; and (3) action based thereon of such a character as to change [the plaintiff's] position prejudicially." *Id.* (citation omitted). Notably, equitable estoppel applies only if the defendant took "active steps to prevent the plaintiff from filing [her] case." *Belton*, 175 F. App'x at 654 (citing *Eng. v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)).

Here, Plaintiff claims BPD took active steps to prevent her from filing by not informing her of the status of the internal review regarding her demotion and workers' compensation claim. Pl. Opp'n at 12. However, "simply failing to update the plaintiff[ ] on the progress of the investigation does not qualify as affirmative misconduct." *Belton*, 175 F. App'x at 654. Also, the "pendency of a grievance or some other method of collateral review of an employment decision does not toll the running of the limitations period." *Id.* (cleaned up) (quoting *De. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980)). Plaintiff has failed to demonstrate that BPD took active steps to prevent her from filing her case, and, therefore, equitable estoppel will not apply.

Equitable tolling is "a discretionary doctrine that turns on the facts and circumstances of a particular case." *Warfaa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). "For equitable tolling to apply, a litigant must establish '(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing.'" *Id.* (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)). Equitable tolling is an "extraordinary remedy," and "litigants face a considerable burden to demonstrate that it applies." *Id.* (quoting *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015)). It "must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would

be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

In this case, Plaintiff filed a grievance with BPD and, subsequently, was injured by a car accident that ultimately required extended medical leave. Pl. Opp'n at 12. But "[t]he pendency of the internal appeal does not toll the running of the limitations period." *Mezu v. Morgan State Univ.*, 367 Fed. App'x 385, 389 (4th Cir. 2010) (citations omitted). Further, Plaintiff does not cite any case law to suggest that medical leave constitutes extraordinary circumstances sufficient to justify equitable tolling, and this Court does not find that it does. *Compare McCoy v. Transdev Srvs., Inc.*, Civ. No. DKC-19-2137, 2020 WL 2319117, at *5 (D. Md. May 11, 2020) (holding equitable tolling applied when plaintiff's claim was delayed by initial onset of COVID-19 pandemic); *with Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 171 (D. Md. 2022) (holding equitable tolling did not apply to period plaintiff received outpatient treatment). Plaintiff fails to identify any circumstances apart from her own conduct that prevented her from timely filing any claims arising from her October 2016 demotion. The Court does not find it to be unconscionable to enforce the 42 U.S.C. § 2000e-5(e)(1) time limitation against Plaintiff's claims. Therefore, equitable tolling does not apply.[5]

---

[5] The Court agrees with BPD that there is no justification for disturbing this Court's prior decision. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Kiddie Acad. Domestic Franchising LLC v. Wonder World Learning LLC*, Civ. No. ELH-17-3420, 2020 WL 4339981 at *13 (D. Md. July 27, 2020) (cleaned up). The Fourth Circuit holds "a court may . . . depart from the law of the case [when there is] (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id.* at *14 (quoting *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)) (cleaned up). The Court does not find any clear error, manifest injustice, or change in facts or the law that might justify departing from its prior determination that Plaintiff's pre-December 2017 claims are procedurally barred.

B.      **Title VII Discrimination and Retaliation**

1.      **Applicable Law**

Title VII prohibits an employer from discriminating against an individual with respect to employment based upon the individual's race, color, religion, sex, or national origin, and from retaliating against an individual for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (anti-discrimination provision); 42 U.S.C. § 2000e-3(a) (anti-retaliation provision). Specifically, Title VII provides that it is an "unlawful employment practice" for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Additionally, it is unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]" or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.A. § 2000e-3(a).

The plaintiff bears the burden of proving her claims through one of two methods. The plaintiff may offer "direct or indirect" evidence of discriminatory or retaliatory animus under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021).

Under *McDonnell-Douglas*, the precise formulation of the required prima facie showing will vary in "differing factual situations." 411 U.S. at 802 n.13. Nonetheless, the plaintiff is generally required to show that the employer took adverse action against her "under circumstances

10

which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs. v. Burdine*, 450 U.S. 248, 253 (1981). If a plaintiff establishes a prima facie case, a presumption of illegal discrimination or retaliation arises, and the burden shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. To prevail, the plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Id.* at 256. Despite this burden-shifting framework, "[t]he ultimate burden of persuading the trier of fact remains with the employee at all times." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019) (internal quotation marks and citation omitted).

### 2.    Title VII Retaliation

Title VII prohibits an employer from retaliating against an employee for opposing Title VII violations or participating in any investigation, proceeding, or hearing on allegations of Title VII violations. 42 U.S.C.A. § 2000e-3. "To establish a prima facie claim of retaliation, a plaintiff must show: (1) that [she] engaged in protected activity, (2) that the employer took a materially adverse action against [her] and (3) there is a causal connection between the protected activity and the adverse action." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019).

In this case, the parties do not dispute that Plaintiff participated in protected activity. Specifically, in November 2011, Plaintiff filed a complaint with EODS alleging sexual harassment

("2011 Complaint"). *See* Effland Dep. (ECF No. 84-4) 21:18–21, 121:4–7, 189:11–14; *see also* ECF No. 84-8 (2011 EEOC Determination). Then, in October 2016, Plaintiff filed a second complaint with EODS challenging her demotion, which Plaintiff claimed was retaliation for the 2011 Complaint ("2016 Complaint"). *See* ECF No. 112-1 (EODS Memorandum). It is uncontested that Plaintiff participated in protected activities by filing both the 2011 Complaint and 2016 Complaint.

BPD argues, however, that Plaintiff cannot establish a prima facie case of retaliation because she has failed to adduce facts sufficient to establish that BPD took a materially adverse action against her or that such action was causally connected to her protected activities. ECF No. 84-1 (Def. Mem.) at 24–25. For the reasons explained below, the Court agrees.

To present a prima facie case of Title VII retaliation, a plaintiff must show that her employer took a "materially adverse action" against her after she engaged in protected activity. *Perkins*, 936 F.3d at 213. The employer's conduct must be such that "a reasonable employee would have found the challenged action[s] materially adverse," that is, sufficient to dissuade a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018). The adverse action necessary to sustain a retaliation claim "need not affect the terms and conditions of employment." *Barnes v. Charles Cnty. Pub. Schools*, 747 Fed. App'x 115, 119 (4th Cir. 2018) (per curiam) (citing *Burlington*, 548 U.S. at 64); *see also Strothers*, 895 F.3d at 327 n.3. But the challenged conduct must impose "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." *Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) (quoting *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)).

To present a prima facie case of Title VII retaliation, a plaintiff must also establish "a causal connection" between her protected activity and a materially adverse action by the employer. *Perkins*, 936 F.3d at 213. "A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (citation omitted). A plaintiff may establish facts suggesting that "the adverse action occurred because of the protected activity." *Id.* (cleaned up). Alternatively, a plaintiff may demonstrate that "the adverse act bears sufficient temporal proximity to the protected activity." *Id.* Ultimately, "Title VII retaliation claims require proof that *the desire to retaliate* was the but-for cause of the challenged employment action." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). The employer "is liable for retaliation only if the person with retaliatory animus 'can be deemed a decisionmaker for, or agent of' the employer in taking adverse action against the employee." *McClain v. Lynchburg City Sch.*, 531 F. Supp. 3d 1115, 1130–31 (W.D. Va. 2021) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004)).

In this case, Plaintiff proffers three actions by BPD that she contends were retaliatory: (1) the October 2016 demotion; (2) the challenge against Plaintiff's workers' compensation claim; and (3) the internal investigation arising from the vehicle incident that occurred in the parking garage and subsequent discipline. Pl. Opp'n at 15–17, 23–34.[6]

---

[6]     Plaintiff's opposition to BPD's motion does not address the internal investigations of Plaintiff's use of a BJ's Wholesale membership card or involvement in a domestic incident away from home while on medical leave. Plaintiff does not appear to be pursuing any retaliation claim based in these two investigations. *See Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 448 (D. Md. 2022) ("A plaintiff who fails to respond to an argument for summary judgment is deemed to have abandoned the claim.").

First, because Plaintiff's recovery is limited to discrete discriminatory or retaliatory acts occurring on or after February 21, 2017, *see* ECF No. 43 at 10, Plaintiff cannot recover for the October 2016 demotion.

Second, the Court cannot find that a reasonable juror would find BPD liable for retaliation under Title VII based on the City of Baltimore contesting Plaintiff's claim for workers' compensation benefits. The City of Baltimore's challenge cannot be imputed to BPD as they are separate entities. *Middleton v. Baltimore City Police Dep't*, Civ. No. ELH-20-3536, 2022 WL 268765, at *13 (D. Md. Jan. 28, 2022) ("[I]t is well settled that the City does not 'regulate or supervise the BPD.' . . . Despite the fact that the Department's operations are partially funded by the City, the BPD 'is constituted as an agency of the State.'") (citations omitted). Plaintiff does not respond to BPD's argument that the City and BPD are separate legal entities.

Third, assuming without deciding that the IA investigation of the garage accident could be found materially adverse, BPD has provided legitimate, non-retaliatory reasons for this investigation, and Plaintiff fails to offer any evidence that these reasons are a pretext for retaliation. There is no dispute that on January 19, 2017, Plaintiff was struck by a patrol vehicle operated by another officer and that Plaintiff did not immediately report the incident to her supervisor and AIU, as required by BPD policy. Effland Dep. 184:9–185:9, 195:2–196:10, 203:1–6; ECF No. 85-3 at 6–7; ECF No. 111-17 at 2 (BPD Policy 908 requiring members to report vehicle accidents "[i]mmediately" to immediate supervisors and to the Communications Unit).[7] As a result, Plaintiff received a one-day loss of leave and a letter of reprimand. ECF No. 112-6. The apparent violation

---

[7]     Plaintiff testified in her deposition that she reported the accident to her supervisor and another BPD employee the day it occurred but did not testify that she reported it immediately. Effland Dep. 195:2–196:10. She testified that she did not report the accident to anyone else. *Id.* Thus, Plaintiff did not report the accident to AIU or to Communications at all.

of policy provided legitimate, non-retaliatory grounds for Plaintiff's supervisor to file an IA complaint and for IA to investigate the matter. *See* ECF No. 85-3; *United States v. Balt. Police Dep't.*, Civ. No. JKB-17-0099, ECF 2-2 ¶ 343 (consent decree requiring BPD to investigate "all allegations of officer misconduct").

Plaintiff offers no evidence or reason to suggest that the foregoing was a mere pretext for retaliation or that the report to IA and subsequent investigation and discipline were motivated by retaliatory animus. When asked at her deposition why she believed the investigation to be retaliatory, Plaintiff stated, in part, "I feel like the investigation would have never been opened the way that it was or investigated the way that it was." Effland Dep. 185:21–186:6. Plaintiff's speculation does not suffice to create a genuine dispute.[8]

Fourth, Plaintiff's retaliation claims also fail for lack of evidence of any causal connection between her protected activities and the IA investigation of the parking garage accident. Plaintiff fails to present any evidence that the individuals who reported and investigated her conduct in connection with the parking garage accident—Director Harder and Lt. Robert Morris—had any

---

[8]    Plaintiff argues in her opposition that the internal investigation of the parking garage incident was used "to manufacture pretextual reasons to force her to resign or set her up to be dismissed." Pl. Opp'n at 30. This argument suggests an allegation of constructive discharge, a basis for relief not asserted in the Amended Complaint. In any case, Plaintiff does not present sufficient evidence to overcome summary judgment on any constructive discharge claim.

Constructive discharge requires that a reasonable person in the plaintiff's position "would have had *no choice* but to resign" as a result of "intolerable" work conditions. *Perkins*, 936 F.3d at 212 (citations omitted); *see also Green v. Brennan*, 578 U.S. 547, 555 (2016). The standard is an objective one, viewed from the plaintiff's standpoint. *Perkins*, 936 F.3d at 212. Whether an employer acted deliberately or with "a subjective intent to force a resignation[]" is not sufficient to establish a constructive discharge. *E.E.O.C. v. Consol. Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) (citing *Green*, 578 U.S. 547). Perceived unfair criticism and frustrating working conditions are not so intolerable as to establish constructive discharge. *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir. 1994).

No evidence has been presented to suggest that the IA investigation, the resultant loss of one day of leave, and letter of reprimand were so intolerable as to compel a reasonable person in Plaintiff's position to resign or retire. Plaintiff's constructive discharge allegation fails as a matter of law.

knowledge that Plaintiff filed a discrimination complaint in October 2016. Instead, Plaintiff argues that Commissioner Worley—who, she alleges, "pushed for" her demotion in October 2016, Pl. Opp'n at 21—oversaw IA investigations and, therefore, was the true "decisionmaker" behind the investigation and subsequent discipline. Pl. Opp'n at 26. Worley only briefly worked in IA for 30 to 60 days and had no decision-making role in any investigation of Plaintiff. Worley Dep. 43:11–19. It is unclear precisely when Worley was assigned to IA. *Compare id.* at 39:2–14 (indicating work in IA in 2017); *with id.* at 282:1–15 (indicating work in IA in 2018). Regardless, Worley testified that his role in IA was limited to overseeing the investigation into the Gun Trace Task Force ("GTTF"). *Id.* at 41:4–43–12. In this role, he reported to the chief of IA. *Id.* at 41:13. There is no evidence that Worley played any role in the IA investigation of the parking garage incident.

In sum, Plaintiff has failed to present evidence that any adverse action by BPD was causally connected to her Title VII protected activities. BPD is therefore entitled to summary judgment on her Title VII retaliation claims.

### C.     Title VII Discrimination

In her opposition, Plaintiff argues that genuine disputes of material fact preclude summary judgment on her sex discrimination claims, Pl. Opp'n at 1, but she offers little in the way of substantive argument or evidence in support of those claims. Finding no triable issue, summary judgment will be entered in favor of BPD on Plaintiff's Title VII discrimination claims.

To establish a prima facie case of discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) an adverse employment action by the employer; (3) satisfactory job performance at the time of the adverse employment action; and (4) that the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466,

468 (4th Cir. 2015) (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)). The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

"[S]ome adverse employment action is required" to prevail on a claim of discrimination under Title VII. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). The employer's action must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." *Id.* (quoting *James*, 368 F.3d at 375). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

As discussed in Part III.B.1 *supra*, the only potential adverse action that Plaintiff suffered during the recoverable period (after February 21, 2017) was her discipline for conduct unbecoming, arising from the parking garage incident. This discipline included loss of one day of leave. Plaintiff offers no evidence to demonstrate that the discipline was imposed under circumstances giving rise to an inference of discrimination. *See Adams*, 640 F.3d at 558. There is no evidence to show that either of the individuals involved in filing and investigating the internal complaint regarding the parking garage—Director Harder and Lt. Morris—acted with any discriminatory animus. And Plaintiff presents no evidence that similarly situated male colleagues were treated more favorably. *See White*, 375 F.3d at 295. Accordingly, Plaintiff fails to establish a prima facie case of discrimination.

BPD is entitled to summary judgment on Plaintiff's Title VII discrimination claims.

**D.**     **Lilly Ledbetter Fair Pay Act**

Plaintiff states in her opposition that seeks to recover under the Lilly Ledbetter Fair Pay

Act ("LLFPA"). Pl. Opp'n at 32–35. This statute "amended Title VII to address discrimination in

compensation." *Ferguson v. Town of Riverdale Park, Md.*, Civ. No. LKG-20-3574, 2021 WL

5742234, at *5 (D. Md. Dec. 1, 2021). The LLFPA provides that

> an unlawful employment practice occurs, with respect to
> discrimination in compensation in violation of this subchapter, when
> a discriminatory compensation decision or other practice is adopted,
> when an individual becomes subject to a discriminatory
> compensation decision or other practice, or when an individual is
> affected by application of a discriminatory compensation decision
> or other practice, including each time wages, benefits, or other
> compensation is paid, resulting in whole or in part from such a
> decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).

"[T]he phrase 'discrimination in compensation' means paying different wages or providing

different benefits to similarly situated employees[.]" *Schuler v. PricewaterhouseCoopers, LLP*,

595 F.3d 370, 374 (D.C. Cir. 2010). "[T]he plain language of the [LL]FPA covers compensation

decisions and not other discrete employment decisions." *Noel v. The Boeing Co.*, 622 F.3d 266,

274 (3d Cir. 2010), *as amended* (Oct. 18, 2010); *see also Almond v. Unified Sch. Dist. No. 501*,

665 F.3d 1174, 1183 (10th Cir. 2011); *Niwayama v. Texas Tech Univ.*, 590 F. App'x 351, 356 (5th

Cir. 2014) (citing *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 n.2

(5th Cir. 2010)). "To state a claim for discrimination in compensation under the Lilly Ledbetter

Act, plaintiff must demonstrate that she: (1) is a member of a protected class; (2) held a job similar

to jobs held by those outside the protected class; and (3) was paid less than these similarly situated

employees who were outside the protected class." *Ferguson*, 2021 WL 5742234, at *5 (citation

omitted).

BPD argues that the Amended Complaint fails to state a claim for relief under the LLFPA and, even if it did plead such a claim, BPD is entitled to summary judgment on it. Def. Mem. at 33–35; Def. Reply at 15–17. Plaintiff responds that allegations in the Amended Complaint suffice to put BPD on notice that she would seek to recover under the LLFPA. Pl. Opp'n at 32–33. She further argues that, even if her October 2016 demotion was outside the recoverable 300-day EEOC charge filing period, the LLFPA entitles her to recover for each paycheck stemming from that demotion, which she contends was discriminatory. *Id.* at 33–35. Plaintiff's arguments are unpersuasive.

As noted *supra*, several federal Courts of Appeals have held that the LLFPA does not apply to "discrete employment decisions[,]" like a decision not to promote or a decision to demote. *Noel*, 622 F.3d at 274; *see also Schuler*, 595 F.3d at 374; *Niwayama*, 590 F. App'x at 356; *Almond*, 665 F.3d at 1183 (10th Cir. 2011) ("The bill's sponsor, Senator Mikulski, made plain as well that the 'other practice[s]' term does *not* embrace any 'discrete personnel decisions like promotions and discharges,' . . . and that it does not precisely because . . . the use of the preceding phrase 'discrimination in compensation . . . means that [the Act] already covers only such claims— nothing more, nothing less.'") (quoting 155 Cong. Rec. S757 (daily ed. Jan. 22, 2009)).

The LLFPA applies to claims of receiving lower pay for the same work as similarly situated employees outside the plaintiff's protected class. *See Schuler*, 595 F.3d at 374; *Ferguson*, 2021 WL 5742234, at *5. "[E]ach paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment-action that commences the administrative statute of limitations." *Noel*, 622 F.3d at 271. However, the statute "did not create a 'limitations revolution for any claim somehow touching on pay.'" *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 630 (10th Cir. 2012), *abrogated on other grounds by Muldrow v. City of St. Louis,*

*Missouri*, 601 U.S. 346 (2024) (quoting *Almond*, 665 F.3d at 1182). Discrete employment actions, such as a demotion, will often impact compensation, but discrimination claims based on such actions still "accrue as soon as they are announced[,]" *id.* (quoting *Almond*, 665 F.3d at 1182), and must be asserted in a charge filed with the EEOC within 300 days, *Noel*, 622 F.3d at 270. If such claims are not timely asserted and are therefore procedurally barred, the LLFPA does not revive them. *Id.* at 273–75. In particular, the Third Circuit in *Noel* squarely addressed, closely examined, and ultimately rejected the arguments Plaintiff advances here. *See* 622 F.3d at 270–75. This Court is persuaded that the foregoing federal circuit court decisions are correct.

The Court finds that the Amended Complaint does not state a claim for relief under the LLFPA. Plaintiff relies upon allegations that she lost compensation as a result of what she contends was a discriminatory demotion in October 2016. *See, e.g.*, ECF No. 20 (Am. Compl.) ¶¶ 59, 84. While these allegations clearly implicate the impact the demotion had on Plaintiff's compensation, this discrete employment action was not alleged to constitute a "discriminatory compensation decision" under the LLFPA. 42 U.S.C. § 2000e-5(e)(3)(A). Plaintiff does not allege that she was "paid less than" male employees for the same work she was assigned to perform after the demotion. *Ferguson*, 2021 WL 5742234, at *5.

Even if the Amended Complaint stated a plausible claim for relief under the LLFPA, BPD would be entitled to judgment as a matter of law on such a claim. There is no genuine dispute that she was paid appropriately for her rank. Effland Dep. 403:16–404:9. Plaintiff presents no evidence to suggest otherwise.

## IV.    CONCLUSION

For the reasons stated herein, BPD's Motion for Summary Judgment (ECF No. 84) will be granted, and summary judgment will be entered in BPD's favor.

A separate Order will issue.

  9/30/24  
Date

Matthew J. Maddox
United States District Judge